**EXCHANGE INSURANCE ASSOCIATION, a corporation of the State of Illinois, Plaintiff-Appellant,**

v.

**Edward MILLER, Edward Bradbury, Magda Goerl and Albert T. Goerl, Defendants-Appellees.**

No. 12223.

United States Court of Appeals Third Circuit.

Argued Oct. 11, 1957.

Decided Nov. 12, 1957.

H. Frank Pettit, Westfield, N. J., for appellant.

Harold D. Feuerstein, Newark, N. J., for Magda Goerl and Albert T. Goerl.

Michael C. Mirk, Basking Ridge, N. J., for Miller and Bradbury.

Before BIGGS, Chief Judge, and MARIS and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

In this policy suit for a declaratory judgment, the insurer plaintiff sought to establish that the accident involved was not within the insurance contract.

 The contract covered a fleet of defendant Miller's automobiles with standard liability protection. An en-

dorsement to it respecting the truck with which we are concerned reads:

"In consideration of premium charged for the equipment described in the policy to which this endorsement is attached, and forms a part of, it is agreed that the automobile or automobiles described in the policy will be operated and used entirely within a radius of fifty miles from the place where such automobile or automobiles are principally garaged; and it is further understood and agreed that no coverage is provided under this policy * * * if such equipment is proceeding to or returning from a point beyond 50 miles from Philadelphia, Pa. regardless of where such piece of equipment may be involved in any accident."

Miller loaned the truck to the defendant Bradbury. While driving it the latter was in a collision with the car of the defendants Goerl on November 1, 1954 on a bridge between Mountainside and Westfield, New Jersey. Bradbury had garaged the truck at Mountainside the evening before. Parts of Mountainside and Westfield are within 50 miles of Philadelphia, parts of each are further than 50 miles from Philadelphia. The scene of the collision was map-measured as being 51 miles from Philadelphia; the garage in Mountainside was ascertained to be 50.85 miles from Philadelphia.

The restrictive endorsement in its definitive statement gives the use and operative area for the designated vehicle as being within a fifty mile radius from the place where the vehicle is principally garaged. That place is concededly Philadelphia and the company admits that the 50 mile distance is to be measured from the nearest part of Philadelphia, not from the location of the truck's garage in that city. As indicated parts of both Mountainside and Westfield are within the fifty mile radius. They are "places" in the same sense that Philadelphia is a "place" as that word is used in the phrase "place of principal garaging." Without

further relevant restrictive language for the stated allowable zone it is a distortion of the context to reach into the next independent clause of the endorsement, pick up the word "point", claim it is juxtaposed to "place" and then assert that the first clause in this instance confines the operation of the truck to an area within the locus described by the distal terminus of a 50 mile radius the proximal terminus of which traces round the boundary of Philadelphia; such a reading is inconsistent in its use of what are, for practicable purposes, interchangeable terms. At one terminus of the 50 mile radius is the geographic place denominated Philadelphia; at the other would be a geometric point. We are not saying that this could not have been provided for by lucid draftsmanship; only that it is not now distinctly so characterized. The obvious difficulty in the application of the construction pressed by the plaintiff-appellant to the practical work-a-day affairs of any business similar to the assured's is another deterrent to adopting that construction if another reasonable construction is possible. The sensible construction of the policy provision here in question, then, seems to be that coverage under the policy extends to any accident occurring within the geographic limits of a place denominationally equated with Philadelphia, part at least of which place is within 50 miles of Philadelphia.

Another difficulty with the construction asserted by the plaintiff-appellant is that the second clause of the endorsement would be contradictory of the first clause, if "point" is taken (as appellant contends) to be the Mountainside garage or service station where the truck had been left the night before. It would be attempting a sharp distinction between the specific designation of the large city of Philadelphia as the "place" of the principal garage and the exact service station itself in the small town of Mountainside as the "place" of the occasional garage. This forced interpretation is hardly the contract the parties made, certainly not the clear insurance agreement

that the courts are bound to uphold. The remaining phrase of the second clause "regardless of where any such piece of equipment may be involved in any accident" would seem of minor importance in the dispute. If the Mountainside garage was not the critical measurement, the collision location was not either, for when the accident occurred the truck was on its return trip to Philadelphia and was traveling the proper highway. The fractional increase in mileage seems to have been caused by the somewhat winding road.

Aside from the above, if the word "point" could be transposed to read on the first clause we doubt that its meaning is so stylized as to bring to the endorsement the clarity necessary to defeat the coverage. Even the ordinary dictionary carries 69 separate meanings for "point". Appellant urges that "although the word 'place' is often used to express the same meaning as 'point', the converse is never true * * * ." According to the New Standard Dictionary [1] it is the converse which presents the real picture. The first definition there given of point is: "The sharp end of a thing, particularly of anything that tapers so as to be very small and keen at the extremity; as, the *point* of a needle or thorn." The illustration indicates plainly the inapplicability here of that meaning. The sixth definition is the one pertinent to the present problem. That states "point" to be, "A particular place, location, * * " and the illustration given is most apropos. " 'From there [Vicksburg] a railroad runs east, connecting with other roads leading to all *points* of the Southern States.' U. S. Grant Personal Memoirs, vol. 1, p. 422 [C.L.W.1885]." Geographically, the same dictionary describes "point" to be, "A tapering tract of land extending into the sea, a lake, or a river, or beyond the line of the shore; a promontory; cape, headland; as, *Point* Judith." The lack of any settled distinction between use of the words "point" and "place" in the same sense evidences

their interchangeability. With "place" conceded to mean Philadelphia, "point" preferably would mean Westfield or Mountainside in the pertinent construction of this policy.

Two other items should be noted. In the light of the facts which need not be stated at length, the first reveals serious questions of both waiver and estoppel on the part of the insurer by its giving every inference for 14 months after the accident and right up to the time set for trial in the state court that it considered itself bound to defend for the assured in conformity with the terms of the policy. While the terms waiver and estoppel were used more or less synonymously, the district court was strongly impressed with the estoppel feature. It held Pennsylvania law controlling and concluded that the opinion of the Supreme Court of that state in Malley v. American Indemnity Corp., 1929, 297 Pa. 216, 146 A. 571, 81 A.L.R. 1322, was decisive. Because we think our above view regarding the endorsement issue completely disposes of this appeal, we express no opinion on this question.

■■■ The remaining contention is also serious. It was not, as a practical matter, before the district court and was never passed upon. Defendants Goerl, at the trial, relied on the copy of the policy furnished them in response to discovery proceedings. This did not contain an endorsement which appeared on the original policy. That reads:

"Nothing contained in this policy or any other endorsement thereon, nor the violation of any of the provisions of the policy or of any endorsement thereon by the insured, shall relieve the Company from liability hereunder or from the payment of any such final judgment."

The failure to furnish the endorsement was in good faith and the endorsement itself was unknown or overlooked until after the district court proceedings when it was discovered in the original contract which had been produced at the trial by

1. Funk and Wagnalls, New York (1944).

the defendant assured. Since the problems to which it gives rise were never brought to the attention of the trial judge and no testimony in connection with them taken, we cannot of course examine them on this appeal. That would be a matter for the trial court on remand. However, concluding, as we have, that there is coverage under the policy we need not take such action at this time.

The judgment of the district court will be affirmed.